IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CHARLES MCCORVEY,                          :

    Plaintiff,                                      :

vs.                                                    :   CIVIL ACTION 08-0151-WS-C

EARL SMITH,                                     :

    Defendant.                                    :

## REPORT AND RECOMMENDATION

The motion to dismiss filed by Defendant, Earl Smith (Doc. 16), has been referred for report and recommendation, under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2. Jurisdiction has been invoked in this Court under 28 U.S.C. § 1331, pursuant to 42 U.S.C. § 1983. After consideration, it is recommended that Defendant's motion be granted, that this action be dismissed, and that judgment be entered in favor of Defendant Earl Smith and against Plaintiff Charles McCorvey on all claims.

## I. SUMMARY OF ALLEGATIONS AND PROCEEDINGS

1. Assuming Plaintiff's allegations as true, the facts are as follows. On or about March 24, 2006, at approximately 9:30 p.m., Plaintiff was lawfully operating his car on a public road in Mobile County, Alabama, when the car broke down "a mere four houses away from his home." (Doc. 1 at 3, Complaint).

2. The car "was on the side of the road and was not obstructing the normal movement of traffic." (Id.).

3. Plaintiff telephoned his mechanic from inside his car and waited for the mechanic's response. (Id.).

4. Plaintiff's car had recently undergone transmission repair, and his mechanic had told him that "if the transmission had any problems, Plaintiff should call him before trying to drive or push the car." (Id.).

5. Plaintiff had been waiting in his car for his mechanic to call for approximately forty-five minutes when Officer Earl Smith of the Mobile Police Department arrived. (Id.).

6. Officer Smith asked Plaintiff for his identification, and Plaintiff gave him his driver's license. (Id. at 4). Officer Smith also asked Plaintiff if he had any weapons, and Plaintiff stated that he did not. (Id.).

7. Plaintiff "explained his situation" to Officer Smith and informed Officer Smith that his home was only four houses away. (Id.).

8. After hearing Plaintiff's explanation, Officer Smith "ordered Plaintiff out of the car, searched, handcuffed, and placed him in the back of a squad car." (Id.). While in the squad car, Officer Smith checked Plaintiff's record. (Id.). Officer Smith did not respond to Plaintiff's questions about "why he was being arrested." (Id.).

9. After approximately fifteen minutes, Officer Smith's supervisor arrived on the scene, went to Plaintiff's home, and returned with Plaintiff's wife. (Id.).

10. After completing the check on Plaintiff's record, Officer Smith released Plaintiff, and Officer Smith and his supervisor drove approximately one block away and

waited.  (Id.).

11. Plaintiff returned to his car and "vigorously tried to get his car to move."  (Id.).
Plaintiff was unable to do so.  He sat inside his car and continued to attempt to reach his
mechanic on the phone.  (Id.).

12. After approximately twenty to thirty minutes, Officer Smith and his supervisor
returned.  (Id.).

13. Officer Smith told Plaintiff that "he either had to move his car immediately or
they were going to push the car to his house."  (Id. at 5).

14. Plaintiff told Officer Smith that he did not want them to push the car because
of the transmission problems and that he was waiting for his mechanic to call him back.
(Id.).

15. Officer Smith then informed Plaintiff that if he would not allow them to push
his car, he would be placed under arrest.  (Id.).

16. Plaintiff refused and was placed under arrest for failure to obey the direction or
order of a police officer.  (Id. at 5-6).

17. On March 26, 2006, Plaintiff was released from custody.  (Id. at 6).

18. On August 8, 2006, Plaintiff was tried in Mobile Municipal Court and found
guilty of the offense of failure to obey the direction or order of a police officer.  (Id.; Doc.
11 at 5, Answer).  Plaintiff  was sentenced to ten days in jail.  (Doc. 1 at 6).

19. Plaintiff was not allowed to post bond and served his ten days in jail.  (Id.).

20. Plaintiff appealed his conviction to Mobile County Circuit Court and was

appointed legal counsel on October 17, 2006.  (Id. at 7).

21. On November 11, 2006, the court *nolle prossed* the charges against Plaintiff on

a motion from the Assistant District Attorney.  (Id.).

22. On March 19, 2008, Plaintiff filed the present § 1983 action against Officer

Smith in his individual capacity, alleging false arrest and malicious prosecution in

violation of the Fourth Amendment of the United States Constitution.  (Doc. 1 at 8-11).

23. Plaintiff claims that, as a result of Defendant's actions, he "experience[d] loss

of money, loss of income, pain, suffering, embarrassment, humiliation, extreme mental

anguish and severe emotional distress."  (Doc. 1 at 10-11).  Plaintiff seeks declaratory,

compensatory, and punitive damages.  (Id. at 12).

24. In his Answer filed on May 2, 2008, Defendant Smith denies Plaintiff's

allegations and asserts that he is entitled to qualified immunity from suit.   (Doc. 11,

Answer).

## II.  STANDARD OF REVIEW

1. "When considering a motion to dismiss, all facts set forth in the plaintiff's

complaint 'are to be accepted as true and the court limits its consideration to the pleadings

and exhibits attached thereto.'" Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231

(11th Cir. 2000) (quoting GSW, Inc. v. Long County, 999 F.2d 1508, 1510 (11th Cir.

1993)).

2. In order to state a claim for relief, the Federal Rules of Civil Procedure state that

a pleading must contain "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R.Civ.P. 8(a)(2).

3. "Although the rule encourages brevity, the complaint must say enough to give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Tellabs, Inc. v. Makor Issues & Rights, Ltd., __ U.S. __, 127 S. Ct. 2499, 2507 (2007) (citations omitted).

4. Factual allegations do not have to be detailed.  However, they must contain more than "labels and conclusions."  Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1965 (2007).  "[A] formulaic recitation of the elements of a cause will not do." Id. (citations omitted).  Assuming all of the factual allegations in the Complaint are true, they "must be enough to raise a right to relief above the speculative level." Id.

5. "Facts that are merely consistent with the plaintiff's legal theory will not suffice when, without some further factual enhancement [they] stop short of the line between possibility and plausibility of entitle[ment] to relief." Weissman v. National Ass'n of Sec. Dealers, Inc., 500 F.3d 1293, 1310 (11ᵗʰ Cir. 2007) (citations and internal quotation marks omitted).

6. "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

7. "Taking the facts as true, a court may grant a motion to dismiss when, 'on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.'" Jackson v. Genesys Credit Mgmt., 2007 WL 4181024, *1 (S.D.

Fla. 2007) (quoting <u>Marshall County Bd. of Educ. v. Marshall County Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993)).

8. "A complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim." <u>Cottone v. Jenne</u>, 326 F.3d 1353, 1357 (11th Cir. 2003).

9. "Once the affirmative defense of qualified immunity is advanced . . . [u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." <u>Id.</u> (citations omitted).

## III.  DISCUSSION

1. As discussed above, Plaintiff seeks redress in this action pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of his arrest on March 24, 2006, after he failed to obey the order of a police officer to move his disabled vehicle from the side of the road or allow the police to move it.

2. Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

3. The Fourth Amendment further provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S.C.A. Const. Amend. IV.

4. In this action, Plaintiff has sued Defendant Smith in his individual capacity as a City of Mobile police officer, claiming that Officer Smith violated his Fourth Amendment rights by arresting him without probable cause and by maliciously, and without probable cause, instituting a judicial proceeding against him for failure to obey the direction or order of a police officer.  (Doc. 1 at 10-11).

5. Defendant Smith asserts that he is entitled to qualified immunity with respect to Plaintiff's Fourth Amendment claims.  The Court will address each of Plaintiff's claims in turn.

A. False Arrest.

6. "Under the Fourth Amendment, which is applicable to the States through the Fourteenth Amendment, persons have the right not to be arrested without probable cause." Von Stein v. Brescher, 904 F.2d 572, 578 (11th Cir. 1990).  Violation of this right may give rise to a claim for damages under § 1983.  Id.

7. "A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he or she has reasonably

7

trustworthy information, would cause a prudent person to believe, under the

circumstances shown, that the suspect has committed, is committing, or is about to

commit an offense."  Id.

8. "The existence of probable cause to arrest is based on objective standards."  Id.

An arrest "must stand on more than suspicion," but "the arresting officer need not have in

hand evidence sufficient to obtain a conviction."  Id. at 578 n.9.

9. "[F]or probable cause to exist, 'an arrest [must] be objectively reasonable under

the totality of the circumstances.'"  Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998)

(citations omitted).

10. Under the circumstances of this case, the Court finds that Officer Smith had

probable cause to arrest Plaintiff.

11. Alabama Code § 32-5A-136 provides:

> (a) Outside a business or residence district no person shall
> stop, park or leave standing any vehicle, whether attended or
> unattended, upon the roadway when it is practicable to stop,
> park or so leave such vehicle off the roadway, but in every
> event an unobstructed width of the highway opposite a
> standing vehicle shall be left for the free passage of other
> vehicles and a clear view of such stopped vehicle shall be
> available from a distance of 200 feet in each direction upon
> such highway.

12. Section 32-5A-139 further provides:

> (a) Whenever any police officer finds a vehicle standing upon
> a highway in violation of any of the provisions of Section
> 32-5A-136 such officer is hereby authorized to move such
> vehicle, or require the driver or other person in charge of the
> vehicle to move the same, to a position off the paved or

main-traveled part of such highway.

13. In addition, City of Mobile Municipal Code § 39-54 provides:

> (a) It shall be unlawful and an offense against the city for any
> person to fail to obey the direction or order of a member of
> the police department of the city while such member is acting
> in an official capacity in carrying out his duties.

See generally Ex parte Battles, 771 So. 2d 503, 504 (Ala. 2000).

14. In his Complaint, Plaintiff alleges a scenario whereby his car became disabled
at approximately 9:30 p.m. "on the side of the road" only four houses from his home.

15. When Officer Smith arrived on the scene, Plaintiff told Officer Smith that he
lived only four houses away and that he had been sitting in his vehicle for forty-five
minutes waiting for his mechanic to return his call.

16. Plaintiff told Officer Smith that he had recently had the transmission repaired
and that he had been instructed by his mechanic to call him before trying to drive or push
the car, should he have problems.  (Doc. 1 at 3).

17. Officer Smith asked to see Plaintiff's driver's license and asked Plaintiff if he
had any weapons.  Plaintiff produced his license and told Officer Smith that he had no
weapons.

18. Officer Smith then asked Plaintiff to get out of the car; he handcuffed Plaintiff;
and he placed Plaintiff in the back of the squad car.

19. After approximately fifteen minutes, Officer Smith's supervisor arrived on the
scene and went to Plaintiff's house, returning with Plaintiff's wife.

20. After checking Plaintiff's record, Officer Smith released Plaintiff, and Plaintiff returned to his car.

21. Approximately thirty minutes later, Office Smith and his supervisor returned to find Plaintiff still inside his car waiting on his mechanic to return his call.

22. Officer Smith ordered Plaintiff to move his car or allow the police to push the car to Plaintiff's house.  Plaintiff refused.

23. In his Complaint, Plaintiff asserts that he was not "obstructing the normal movement of traffic," and, therefore, he did not have to obey Officer Smith's order to move his vehicle.  (Doc. 1 at 3-5).

24. However, whether Plaintiff's vehicle was "obstructing the normal movement of traffic," is not, alone, determinative of whether Officer Smith had the authority to order Plaintiff to move his vehicle and arrest him if he refused.

25. Under §32-5A-136, not only must a vehicle parked on the side of the road not obstruct traffic, there must also be "a clear view of such stopped vehicle . . . available from a distance of 200 feet in each direction upon such highway."  It is unknown in this case whether Plaintiff's disabled vehicle was clearly visible from a distance of 200 feet in each direction, as required by the statute.

26. In any event, whether or not Plaintiff was in violation of § 32-5A-136, the Alabama courts have recognized that, apart from any statutory authority, the police have an inherent authority to remove damaged vehicles from the highway based on what is called "the community caretaking function."  Riley v. State, 583 So. 2d 1353, 1355 (Ala.

Crim. App. 1991) (quoting <u>Cady v. Dombrowski</u>, 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed.

2d 706 (1973); <u>South  Dakota v. Opperman</u>, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d

1000 (1976)).

27. That function has been explained as follows:

> "'In the interests of public safety . . . automobiles are
> frequently taken into police custody. . . .  To permit the
> uninterrupted flow of traffic and in some circumstances to
> preserve evidence, disabled or damaged vehicles will often be
> removed from the highways or streets at the behest of police
> engaged solely in caretaking and traffic-control activities.
> Police will also frequently remove and impound automobiles
> which violate parking ordinances and which thereby
> jeopardize both the public safety and the efficient movement
> of vehicular traffic.  **The authority of police to seize and
> remove from the streets vehicles impeding traffic or
> threatening public safety and convenience is beyond
> challenge**.' 428 U.S. at 368-69, 96 S. Ct. at 3096-97."

<u>Riley</u>, 583 So. 2d at 1355 (emphasis added) (citations omitted).

28. In the present case, Plaintiff alleges that his vehicle was not obstructing traffic.

The Court assumes that to be true.  However, Plaintiff's vehicle was parked on the side of

the road late at night.[1]  The hazards posed to other motorists by a disabled vehicle parked

on the side of the road at night are obvious.

29. In addition, although Plaintiff lived only four houses away from the location at

which his car became disabled, he remained inside his vehicle, placing himself at risk of

---

[1] Plaintiff's allegations establish that his vehicle became disabled on the side of the road
at approximately 9:30 p.m., and Officer Smith ordered Plaintiff to move his vehicle at
approximately 11:00 p.m.  (Doc. 1 at 3-5).

injury in the event that another motorist struck the car.

30. Under the circumstances alleged, even assuming that Plaintiff's vehicle was

not "obstructing" traffic in the roadway itself, Officer Smith had the authority to order

Plaintiff to move his vehicle, or allow it to be moved, inasmuch as the vehicle's continued

presence beside the roadway late at night posed a threat to public safety.

31. Because Plaintiff failed to obey Officer Smith's lawful order to move his

vehicle or allow it to be moved, Officer Smith had actual probable cause to arrest

Plaintiff.

32. "An arrest made with probable cause is an absolute bar to a § 1983 false arrest

claim." Fox v. Graff, 276 Fed. Appx. 936, 938 (11th Cir. 2008).

33. Therefore, Plaintiff's allegations fail to state a claim upon which relief could

be granted for a Fourth Amendment violation arising out of his arrest.

34. Moreover, even assuming that Officer Smith did not have actual probable

cause to arrest Plaintiff, Plaintiff's Fourth Amendment false arrest claim would still fail

inasmuch as Defendant Smith would be entitled to qualified immunity.

35.    Intertwined with the question of probable cause is the issue of
       qualified immunity.  Under this doctrine, "government
       officials performing discretionary functions generally are
       shielded from liability for civil damages insofar as their
       conduct does not violate clearly established statutory or
       constitutional rights of which a reasonable person would have
       known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct.
       2727, 2738, 73 L. Ed. 2d 396, 410 (1982).  "[T]he right the
       official is alleged to have violated must have been 'clearly
       established' in a more particularized, and hence more
       relevant, sense: The contours of the right must be sufficiently

12

> clear that a reasonable official would understand that what he
> is doing violates that right." Anderson v. Creighton, 483 U.S.
> 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987).
> The standard is an objective one, Harlow, 457 U.S. at 818,
> 102 S. Ct. at 2738, 73 L. Ed. 2d at 410, and therefore does not
> include an inquiry into the officers' subjective intent or
> beliefs. Anderson, 483 U.S. at 639, 107 S. Ct. at 3038, 97 L.
> Ed. 2d at 530. In sum, qualified immunity protects "all but
> the plainly incompetent or those who knowingly violate the
> law." Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092,
> 1096, 89 L. Ed. 2d 271, 278 (1986).

Von Stein, 904 F.2d at 578-79.

36. "Qualified immunity is 'an entitlement not to stand trial or face the other

burdens of litigation.' . . .  The privilege is 'an *immunity from suit* rather than a mere

defense to liability.'" Saucier v. Katz, 533 U.S. 194, 200 (2001) (emphasis in original).

37. "To receive qualified immunity, the public official 'must first prove that he

was acting within the scope of his discretionary authority when the allegedly wrongful

acts occurred.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (citations

omitted).

38. Plaintiff concedes that Defendant Smith was acting within his discretionary

duty as a law enforcement officer when the events at issue occurred.  Plaintiff states in his

Complaint, "[a]t all times material hereto, Defendant was acting as a law enforcement

officer pursuant to State statute, and the ordinances, customs, and policies of the City of

Mobile, Alabama, Police Department."  (Doc. 1 at 8).

39. In determining whether qualified immunity exists in a false arrest case, the

issue is not one of "probable cause in fact."  Von Stein, 904 F.2d at 579.  Rather, the

Court asks only "whether, viewing the facts in a light favorable to the non-movant, there was *arguable* probable cause for the arrest." Moore v. Gwinnett County, 967 F.2d 1495, 1497 (11ᵗʰ Cir. 1992) (emphasis in original) (citing Von Stein, 904 F.2d at 579).

40. "Actual probable cause is not necessary for an arrest to be objectively reasonable" because "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . in such cases those officials . . . should not be held personally liable." Von Stein, 904 F.2d at 579 (citations omitted).

41. In the present case, therefore, the question is "whether reasonable officers in the same circumstances and possessing the same knowledge" as Defendant Smith could have believed that probable cause existed to arrest Plaintiff for failing to obey an order to move his vehicle or allow it to be moved from the side of the road. Id.

42. For the same reasons discussed above with respect to the issue of actual probable cause, the Court finds that a reasonable officer could have believed that he had probable cause to arrest Plaintiff for failing to obey an order to move his vehicle or allow it to be moved. Thus, Plaintiff's allegations establish "arguable" probable cause for his arrest.

43. For that reason, Defendant Smith is entitled to qualified immunity, and Plaintiff's allegations of false arrest fail to state a claim upon which relief could be granted under the Fourth Amendment.

B. Malicious Prosecution.

14

44. In his Complaint, Plaintiff asserts a claim against Defendant Smith for malicious prosecution based on the allegation that Officer Smith instituted a judicial proceeding against him by signing a false affidavit "charging Plaintiff with a criminal violation."  (Doc. 1 at 10).

45. The Eleventh Circuit has recognized the constitutional tort of malicious prosecution under the Fourth Amendment.   <u>Wood v. Kesler</u>, 323 F.3d 872, 881 (11th Cir. 2003).

46. "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution."  <u>Id.</u>

47. Under Alabama law, the constituent elements of the common law tort of malicious prosecution include: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused."  <u>Id.</u>

48. Having found herein that Plaintiff's allegations establish probable cause for his arrest, Plaintiff's Complaint fails to state a claim against Officer Smith for malicious prosecution based on that arrest.  <u>See</u> <u>Fox</u>, 276 Fed. Appx. at 939-40 ("the district court did not err by dismissing Fox's malicious prosecution claim because Fox cannot show an absence of probable cause for his arrest.").

49. Moreover, "[a] § 1983 claim requires proof of an affirmative causal connection

15

between the defendant's acts or omissions and the alleged constitutional deprivation."

Troupe v. Sarasota County, Fla., 419 F.3d 1160, 1165 (11th Cir. 2005) (citing Zatler v.

Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)); Whiting v. Traylor, 85 F.3d 581, 586

n.10 (11th Cir. 1996) (recovery of damages in a malicious prosecution case "is limited to

those injuries proved to be *caused by the defendants*.") (emphasis in original).

50. In many cases alleging malicious prosecution, "arresting officers will not be

responsible for the continuation of the prosecution because the prosecutor (or some other

factor) will break the causal link between defendants' conduct and plaintiff's injury."

Whiting, 85 F.3d at 586 n.10 (citing Eubanks v. Gerwen, 40 F.3d 1157, 1160-61 (11th

Cir. 1994) (affirming summary judgment for arresting officers where none of the officers

were responsible for the decision to prosecute.); Barts v. Joyner, 865 F.2d 1187 (11th Cir.

1989) (recognizing that, to hold the police responsible for damage resulting from legal

proceedings occurring after the arrest "makes little sense."); see also Reed v. City of

Chicago, 77 F.3d 1049, 1053 (7th Cir. 1996) (observing that "the State's Attorney, not the

police, prosecutes a criminal action," and that "the chain of causation is broken by an

indictment, absent an allegation of pressure or influence exerted by the police officers, or

knowing misstatements made by the officers to the prosecutor."); Taylor v. Meacham, 82

F.3d 1556, 1564 (10th Cir. 1996) (preliminary hearing and ruling of judge breaks "chain

of causation").

51. In Barts, 865 F.2d 1187, 1195 (11th Cir. 1989), the Eleventh Circuit explained:

> Once someone is arrested and then substantial evidence of the

> suspect's guilt comes to light, the police can do little or
> nothing to stop further proceedings.  Holding the police
> responsible for damage due to these later proceedings makes
> little sense.  Prosecuting, indicting, finding ultimate guilt, and
> sentencing criminal defendants are not the business of the
> police.  In addition, arresting police officers do not ordinarily
> control all the information available to the prosecutor, the
> grand jury, the trial jury and trial judge.  The decisions to
> prosecute, to indict, to convict, and to sentence are
> independent from and involve considerations different from
> the original decision to arrest and result in different harm to a
> person than the harm caused by the original arrest.

Barts, 865 F.2d at 1196.

52. Although Plaintiff alleges that the affidavit signed by Officer Smith charging

him with a criminal violation "was fraudulent and false as there was no probable cause

for Plaintiff's original seizure and ensuing prosecution," Plaintiff's own allegations

establish that there was probable cause for his arrest.  (Doc. 1 at 11).  Plaintiff does not

allege that, following the arrest, Officer Smith improperly influenced or unduly pressured

the prosecutor or the judge.  See Barts, 865 F.2d at 1195.

53. Therefore, Plaintiff's allegations are insufficient to establish that Officer Smith

proximately caused Plaintiff to be maliciously prosecuted.

54. Finally, Plaintiff alleges in his Complaint that he was convicted in Mobile

Municipal Court of failure to obey the direction or order of a police officer and was

sentenced to ten days in jail, which he served completely.  (Doc. 1 at 6).

55. Plaintiff subsequently appealed his conviction to Mobile County Circuit Court,

where the charges were *nolle prossed*.  (Id. at 6-7).

56. A "bare *nolle prosse* without more is not indicative of innocence."  Wilkins v. DeReyes, 528 F.3d 790, 803 (10th Cir. 2008) (citing Washington v. Summerville, 127 F.3d 552, 557 (7th Cir. 1997) ("A *nolle prosequi* is not a final disposition of a case but is a procedure which restores the matter to the same state which existed before the Government initiated the prosecution. . . .  The abandonment of the proceedings does not indicate the innocence of the accused when the *nolle prosequi* results from: an agreement or compromise with the accused; misconduct on the part of the accused in order to prevent trial; or the impossibility or impracticability of having the accused tried.").  See also Whiting, 85 F.3d at 585 n.9 (noting that "a dismissal in the interests of justice [is] not a favorable termination."); Uboh v. Reno, 141 F.3d 1000, 1005 (11th Cir. 1998) (recognizing that a grant of *nolle prosequi* that is "the result of a compromise" is not sufficient to satisfy the requisite element of favorable termination).

57. In this case, Plaintiff alleges that the charge against him for failure to obey the direction or order of a police officer was *nolle prossed* in the Circuit Court after he had *fully served his sentence* for that very same charge in the Mobile Municipal Court.  (Doc. 1 at 6).

58. Under these circumstances, Plaintiff's allegations fail to show that the criminal prosecution was terminated in his favor.  Rather, his allegations indicate nothing more than a termination of criminal proceedings due to the impracticability of re-trying him on a charge for which he had already been convicted and had already served his sentence.

59. For each of these reasons, Plaintiff's Complaint fails to state a claim for

18

malicious prosecution upon which relief could be granted under the Fourth Amendment.

### IV.  CONCLUSION

60. Based on the foregoing, the Court concludes that Plaintiff's allegations fail to state a claim under the Fourth Amendment upon which relief could be granted.

61. Accordingly, it is recommended that the Motion to Dismiss of Defendant Earl Smith be GRANTED and that the entirety of Plaintiff's Complaint against this Defendant be DISMISSED with prejudice.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 16th day of September, 2008.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
## AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
## <u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.      **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.      **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

20