IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHARLES McCORVEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 08-0151-WS-C |
| ) | |
| EARL SMITH, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter comes before the Court on defendant's Motion to Dismiss (doc. 16). On September 16, 2008, after briefing by the parties, the Magistrate Judge entered a Report and Recommendation (doc. 20) recommending that the Motion to Dismiss be granted and that this action be dismissed in its entirety. Plaintiff has filed a Statement of Objection and supporting Brief (doc. 21), wherein he asks the Court to reject the Report and Recommendation and to deny the Motion to Dismiss.

**I.     Background**.

In his Complaint (doc. 1) filed on March 19, 2008, plaintiff, Charles McCorvey, brings causes of action for false arrest and malicious prosecution pursuant to 42 U.S.C. § 1983 against defendant, Earl Smith, who is an officer of the City of Mobile Police Department in Mobile, Alabama. McCorvey's claims are brought solely against Officer Smith in his individual capacity, not his official capacity.

According to the well-pleaded allegations of the Complaint,[1] McCorvey's automobile broke down on the side of the road, in a manner that did not obstruct traffic, just four houses

---

[1] Where, as here, a defendant moves to dismiss a complaint on qualified immunity grounds, courts "accept the allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiffs." *Long v. Staton*, 508 F.3d 576, 579 (11th Cir. 2007); *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007) ("In making a qualified immunity determination, we are similarly obliged to review the facts in the light most favorable to the plaintiff.").

away from his home at approximately 9:30 p.m. on March 24, 2006.  (Complaint, ¶¶ 9, 11.)  McCorvey waited with his vehicle and attempted to contact his mechanic to request assistance.  (*Id.*, ¶ 12.)  The mechanic had previously advised McCorvey that "if the transmission had any problems, Plaintiff should call him before trying to drive or push the car."  (*Id.*)  McCorvey was unable to reach his mechanic at that late hour, but waited with the vehicle in hopes that the mechanic would call him back.  Approximately 45 minutes later, Officer Smith arrived at the scene.  Upon requesting and obtaining McCorvey's driver's license, Officer Smith asked him if he had any weapons, to which McCorvey responded in the negative.  (*Id.*, ¶ 15.)  After McCorvey explained his situation and indicated that his house was nearby, Officer Smith "ordered Plaintiff out of the car, searched, handcuffed, and placed him the back of a squad car," where he was held for more than 15 minutes.  (*Id.*, ¶¶ 17, 18.)  Officer Smith ignored McCorvey's queries as to why he was being arrested.  (*Id.*, ¶ 17.)  Eventually, Officer Smith released McCorvey, and left the immediate area of McCorvey and his vehicle.  (*Id.*, ¶ 19.)

Approximately 20 to 30 minutes later, Officer Smith and his supervisor returned to the scene, where McCorvey and his wife were waiting with the car, still attempting unsuccessfully to reach the mechanic and "vigorously tr[ying] to get his car to move."  (*Id.*, ¶¶ 20-21.)  At that time, Officer Smith "told Plaintiff that he either had to move his car immediately or they were going to push the car to his house."  (*Id.*, ¶ 22.)  Plaintiff declined both options, in response to which Officer Smith "told Plaintiff if he would not allow them to push his car, then he was under arrest."  (*Id.*)  Officer Smith then "arrested, cuffed, and placed Plaintiff in the back of a squad car" a second time, this time for failure to obey an officer, in violation of § 39-54 of the Code of Ordinances of the City of Mobile, Alabama.  (*Id.*, ¶¶ 29, 31.)  McCorvey was formally charged with failure to obey the direction or order of Officer Smith while the latter was acting in his official capacity.  (*Id.*, ¶ 32.)  On August 8, 2006, he was found guilty of that offense and sentenced to 10 days in jail, which he served.  (*Id.*, ¶¶ 35, 38.)  McCorvey appealed the conviction and sentence to the Circuit Court of Mobile County, and on November 11, 2006, the Assistant District Attorney *nolle prossed* the charge, thereby terminating the criminal proceedings.  (*Id.*, ¶¶ 37, 44.)  This lawsuit followed.

After being served with process, Officer Smith filed a Motion to Dismiss all claims against him pursuant to Rule 12(b)(6), Fed.R.Civ.P., on grounds of, *inter alia*, qualified

immunity. The Magistrate Judge has recommended that the Motion be granted, reasoning that McCorvey's § 1983 false arrest claim fails on qualified immunity grounds and his § 1983 malicious prosecution claim fails adequately to plead facts supporting the occurrence of the tort of malicious prosecution.

## II.     False Arrest and the First Seizure of Plaintiff.

Both the Rule 12(b) Motion and the Report and Recommendation focus on McCorvey's arrest and prosecution for failure to obey an order. But the well-pleaded allegations of the Complaint reflect that Officer Smith seized McCorvey <u>twice</u> on the evening of March 24, 2006, first by searching, handcuffing and placing him in the back of the squad car for more than 15 minutes while running a license check, and second by again handcuffing him and placing him in the back of the squad car some time later for failing to obey an order that he either move his vehicle or allow the officers to move it. Both incidents are expressly pleaded in the Complaint and are expressly identified as bases for McCorvey's § 1983 false arrest claim. (*See* Complaint, ¶¶ 52, 55-57.) Thus, Count One is predicated on two distinct seizures; however, the Report and Recommendation examines only the second of those detentions and the Rule 12(b) Motion addresses the earlier incident only as an afterthought.[2]

Defendant is not entitled to qualified immunity at this stage as to the first seizure identified in the Complaint. Where, as here, it is undisputed that a law enforcement officer acted within the scope of his discretionary authority, "a plaintiff seeking to overcome the defendant's privilege of qualified immunity must show (1) that the officer violated her federal constitutional or statutory rights, and (2) that those rights were clearly established at the time the officer acted." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d. 1269, 1273 (11th Cir. 2008); *see also Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (similar). The Court will

---

[2]     Any suggestion that the first seizure identified in the Complaint was not subject to the protections of the Fourth Amendment is baseless. "Fourth Amendment safeguards come into play where there is a show of official authority such that a reasonable person would have believed he was not free to leave." *United States v. Thompson*, 712 F.2d 1356, 1359 (11th Cir. 1983) (citations and internal quotation marks omitted); *see also Bates v. Harvey*, 518 F.3d 1233, 1239 (11th Cir. 2008) ("In Fourth Amendment terminology, an arrest is a seizure of the person, and the reasonableness of an arrest is, in turn, determined by the presence or absence of probable cause for the arrest.") (citation omitted).

examine each of these elements of the qualified immunity analysis in turn.

In determining whether Officer Smith abridged McCorvey's federal constitutional rights, the Court notes that "[a] warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). Conversely, "[a]n arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest." *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003); *see also Kingsland*, 382 F.3d at 1226 ("The existence of probable cause at the time of arrest ... constitutes an absolute bar to a section 1983 action for false arrest."). Thus, the presence or absence of probable cause is the touchstone of whether Officer Smith's first detention of McCorvey violated the Fourth Amendment. "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1137 (11th Cir. 2007) (citation omitted). In the qualified immunity context, the proper test is not actual probable cause, but arguable probable cause, "that is, whether reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest." *Id.* (citation omitted); *see also Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry.").

Examining the well-pleaded facts of the Complaint and taking all reasonable inferences in McCorvey's favor, Officer Smith had neither actual nor arguable probable cause to handcuff and detain plaintiff in the back of a squad car for more than 15 minutes while checking his license. At that juncture, there could be no probable cause to arrest him for disobeying an order, inasmuch as Officer Smith had not yet given any orders to McCorvey to move his vehicle or to do anything else. On its face, the Complaint does not identify facts or circumstances from which a reasonable officer in Officer Smith's shoes could have believed that probable cause existed to seize McCorvey's person at that time. Nor does the Motion to Dismiss identify any theory on which Officer Smith's first seizure of McCorvey was supported by actual or arguable probable

cause.³ Therefore, the Court finds that the Complaint adequately alleges facts showing that McCorvey's Fourth Amendment right to be free from unreasonable seizure was violated when Officer Smith handcuffed him and placed him in the back of his squad car for more than 15 minutes while running a license check.

The Court having found that the Complaint adequately pleads a constitutional violation

---

³ At best, the Motion to Dismiss suggests in conclusory terms that this initial detention constituted a *Terry* investigative stop justified by Officer Smith's reasonable suspicion that criminal activity was afoot. However, defendant fails to cite case law or develop arguments establishing that the kind of detention alleged in the Complaint falls under the *Terry* rubric by, for example, applying the factors identified in *United States v. Acosta*, 363 F.3d 1141, 1146-48 (11th Cir. 2004), for distinguishing whether a particular detention qualifies as an investigatory stop or a full-blown arrest. Moreover, defendant offers no explanation for how the factual allegations and reasonable inferences drawn from the Complaint would give rise to a reasonable suspicion that McCorvey was engaged in criminal activity at that time. To be clear, the Court finds neither that the reasonable suspicion test is inapplicable nor that reasonable suspicion could not have existed here; rather, the Court's determination is that defendant has failed adequately to develop these arguments in briefing its Rule 12(b)(6) Motion, such that he is effectively asking this Court to fill in the blanks for him. A court is under no obligation to perform a movant's research or articulate his arguments for him. In any event, the Court notes that "[n]o brightline test separates an investigative stop from an arrest," and that the proper classification of a seizure "depends on the degree of intrusion, considering all the circumstances." *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995). Given the highly fact-specific nature of this inquiry and defendant's failure to brief it, the Court cannot conclusively determine from the allegations of the Complaint that the initial seizure and detention of McCorvey amounted to a mere investigative stop, not an arrest, as a matter of law, without further evidentiary development and legal elaboration. Even if it were an investigative stop, this theory of defense appears problematic. For example, even if the initial detention of McCorvey were a *Terry* stop, the Eleventh Circuit has explained that "during an investigatory stop, an officer can still handcuff a detainee when the officer reasonably believes that the detainee presents a potential threat to safety." *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1305-06 (11th Cir. 2006). Accepting as true the well-pleaded allegations of the Complaint (to-wit, that the 60-year old plaintiff's car had broken down on a public road within sight of his home, that he had explained the situation to the officer, that he had denied having weapons, that the plaintiff fully cooperated, and that a search had revealed no contraband), it appears doubtful that any law enforcement officer could reasonably have believed McCorvey to pose a threat to anyone's safety that might justify handcuffing and detaining him in the back of a squad car at length. *See id.* (excessively intrusive handcuffing that was not done to protect anyone's safety violates suspect's Fourth Amendment rights). Perhaps Officer Smith's testimony will reveal the existence of a reasonable suspicion justifying the handcuffing and detention of McCorvey, but it does not appear on the face of the Complaint.

with respect to the initial seizure of McCorvey, the next step for qualified immunity purposes is whether the Fourth Amendment rights that Officer Smith allegedly violated were clearly established at the time of the alleged violation. "A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent." *Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1305 (11th Cir. 2005). The "clearly established" threshold is satisfied here. *See Davis v. Williams*, 451 F.3d 759, 764 n.8 (11th Cir. 2006) (in qualified immunity analysis in false arrest context, court focused on whether plaintiff's constitutional rights were violated, because "[t]here is no question that the second step - clearly established - is satisfied, as it is clearly established that an arrest made without probable cause violates the Fourth Amendment"); *Thornton v. City of Macon*, 132 F.3d 1395, 1399 (11th Cir. 1998) ("It is clearly established that an arrest made without probable cause violates the Fourth Amendment."); *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) (same).[4] Accepting as true the Complaint's factual allegations that McCorvey had done nothing wrong, had cooperated fully, had not undertaken any activities giving rise to a reasonable inference that he was engaged in unlawful activity, and had truthfully informed Officer Smith that he was on the street because his car had broken down a stone's throw from home, the law was clearly established that McCorvey's Fourth Amendment rights would be impaired if Officer Smith arrested or otherwise seized him by handcuffing him and depositing him in the back of a squad car for more than 15 minutes while performing routine identification checks.

For all of these reasons, the Court is of the opinion that the Complaint, taken in the light most favorable to plaintiff, raises substantial questions as to whether Officer Smith's first seizure of McCorvey was supported by arguable probable cause or reasonable suspicion, based on well-settled, clearly established principles of Fourth Amendment law. Therefore, Officer Smith is not entitled at this time to qualified immunity as to McCorvey's Fourth Amendment claim relating to

---

[4] The result of the "clearly established" analysis would be unchanged even if defendant's half-hearted "investigative stop" theory were embraced. After all, a panel of the Eleventh Circuit recently observed that "[i]t has been clearly established since the Supreme Court decided *Terry* that an investigative stop - a seizure for Fourth Amendment purposes - performed without reasonable suspicion violates the Fourth Amendment." *Childs v. Dekalb County, Georgia*, 2008 WL 2787532, *8 (11th Cir. July 18, 2008).

the first seizure.  The Motion to Dismiss is **denied** insofar as it is predicated on a qualified immunity defense to the portion of Count One concerning the first seizure.[5]

### III.     False Arrest, Malicious Prosecution and the Second Seizure.

With respect to the second seizure of McCorvey, when he was arrested and prosecuted for failure to obey an order from Officer Smith, the Report and Recommendation determined that actual probable cause existed "[b]ecause Plaintiff failed to obey Officer Smith's lawful order to move his vehicle or allow it to be moved."  (Report and Recommendation (doc. 20), at ¶ 31.) The Magistrate Judge's reasoning is straightforward: McCorvey's disabled vehicle was parked on the side of the roadway late at night, creating obvious hazards.  Alabama Code § 32-5A-136(a) provides that "no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park or so leave such vehicle off the roadway."  *Id.*  When a police officer finds a vehicle standing upon a highway in violation of § 32-5A-136, Alabama law authorizes the officer "to move such vehicle, or require the driver or other person in charge of the vehicle to move the same, to a position off the paved or main-traveled part of such highway."  Ala. Code § 32-5A-139.  The allegations of the Complaint reflect that Officer Smith sought to do exactly that, but that McCorvey refused either to move the vehicle himself or to consent to Officer Smith moving it for him.  This refusal created probable cause to arrest McCorvey for violating § 39-54(a) of the Code of Ordinances of the City of Mobile, which renders it "unlawful and an offense against the city for any person to fail to obey the direction or order of a member of the police department of the city while such member is acting in an official capacity in carrying out his duties."  *Id.*

Plaintiff's objections to the Magistrate Judge's analysis center on his contention that Officer Smith's order was unlawful and/or impossible to obey.  The Alabama Supreme Court has construed § 39-54 as criminalizing only the failure to obey <u>lawful</u> orders by a police officer.  *See*

---

[5]     Of course, this ruling does not preclude defendant from re-asserting his qualified immunity defense relating to this cause of action later on as the factual landscape becomes more developed.  *See Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1285 (11th Cir. 2000) ("We stress, however, that defendants retain the right to assert the qualified-immunity defense at the next stage of the proceedings (and, for that matter, throughout the proceedings) as more facts are developed.").

*Ex parte Battles*, 771 So.2d 503, 504 (Ala. 2000) ("If an officer's order is unlawful, then, in giving the order, the officer is no longer acting within his official capacity," such that the failure to obey such an order would not violate § 39-54); *see generally Thornton*, 132 F.3d at 1399 (police officers lacked arguable probable cause to arrest suspect for obstruction of their activities, when officers' activities were not pursuant to their official duties and were outside their authority); *Montoya v. City of Albuquerque*, 2004 WL 3426436, *5 (D.N.M. May 10, 2004) ("A police officer cannot give an unlawful order and then base probable cause for an arrest on a citizen's refusal to obey that unlawful order.").

In furtherance of his objection, plaintiff asserts that Officer Smith "had no probable cause to enforce the provisions of Ala. Code 32-5A-136 or Ala. Code 32-5A-139 because those statutes do not apply to disabled vehicles." (Doc. 21, at 9.) This argument fundamentally misreads the relevant statutory provisions. Contrary to plaintiff's position, disabled vehicles are not categorically exempted from the ambit of §§ 32-5A-136 and 32-5A-139. Rather, the plain statutory language reflects that those provisions "shall not apply to the driver of any vehicle which is disabled while on the paved or main-traveled portion of a highway ***in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.***" Ala. Code § 32-5A-136(b). Nothing in the Complaint reflects that it was "impossible" for McCorvey to avoid leaving his vehicle in the position where Officer Smith found it. To be sure, the Complaint alleges that McCorvey's car "broke down" and that his mechanic had previously told him that if the transmission had problems, McCorvey "should call him before trying to drive or push the car." (Complaint, ¶¶ 9, 12.) The Complaint also alleges that "[b]ecause the car had transmission problems, Plaintiff explained [to Officer Smith] that he did not want the officers to push the car. Plaintiff also told Defendant he was waiting for his mechanic to call back." (*Id.*, ¶ 22.) None of these allegations, or the reasonable inferences drawn from same, reflect that it was impossible for McCorvey to avoid leaving the vehicle in the location where Officer Smith found it. Ordinarily, even an inoperable vehicle can be pushed to safety. Yet nothing in the Complaint supports an inference that it was impossible for McCorvey's vehicle to be pushed off the roadway. At best, the Complaint reflects only that McCorvey did not want his vehicle to be moved in this manner, which is a far cry from the impossibility standard imposed by § 32-5A-136(b) for triggering the disabled vehicle exemption.

In a variation on this theme, McCorvey next asserts that he "was unable to comply with [Officer Smith's] request because the vehicle's transmission was not functioning and the car would not operate" and that he "could not obey the officer's order because it was physically impossible for him to do so." (Doc. 21, at 16-17.)  Again, neither the factual allegations of the Complaint nor reasonable inferences drawn therefrom would support a conclusion that it was "physically impossible" for McCorvey's car to be moved.  By all appearances, even if it could not be driven, the vehicle was capable of being pushed and rolled to safety, but McCorvey did not wish to do it himself and did not want to allow the officers to do it until he received instructions from his mechanic, who had not returned messages left by plaintiff over the preceding two hours.  These circumstances show that leaving the vehicle in its present location was a matter of personal preference for McCorvey, not one of physical impossibility.[6]

Recall that the legal standard for qualified immunity turns on whether there was "arguable probable cause" for the arrest and prosecution of plaintiff.  In other words, the correct inquiry is whether a reasonable officer in these circumstances and possessing the same knowledge that Officer Smith had could have believed that there was probable cause to arrest McCorvey for failure to obey an order.  *See Skop*, 485 F.3d at 1137.  The Court finds that under the facts as alleged in the Complaint, a reasonable officer in Officer Smith's position could have believed that he had authority under § 32-5A-139 to move or to require McCorvey to move plaintiff's vehicle.  It was, after all, late at night.  McCorvey's car had been parked on the roadway for approximately two hours while McCorvey waited to hear from his mechanic.  There

---

[6] In his objections to the Report and Recommendation, McCorvey alleges that "his mechanic specifically told the plaintiff that moving or pushing the vehicle could cause damage to the transmission." (Doc. 21, at 16.)  That allegation does not appear in the Complaint, nor does the Complaint allege that plaintiff notified Officer Smith of that statement.  Equally unavailing is plaintiff's unabashed speculation that "perhaps the transmission would have been permanently damaged" if the car were moved, such that "it would make sense that the plaintiff would not want to undo any repair work that had already been performed." (*Id.* at 16.)  Again, these allegations underscore that the issue here was not one of physical impossibility to obey the order, but was instead McCorvey's preference based on what he thought "would make sense" in light of his own personal interests.  The Court is aware of no authority authorizing a person to disobey a lawful order from a police officer simply because that person subjectively believes that it "would make sense" not to comply or that his pecuniary interests would be better served by not complying.

was no indication that it was impossible to move the vehicle by pushing it to a nearby house; rather, McCorvey simply said that "he did not want the officers to push the car." (Complaint, ¶ 23.) Even if one assumes that McCorvey told the officers of his mechanic's statement that the transmission might be damaged if the vehicle were pushed, a reasonable officer in Officer Smith's position could have concluded that he was authorized under § 32-5A-139 to order the removal of the vehicle anyway.[7] Thus, a reasonable officer in Officer Smith's position could have concluded that his directive to McCorvey to move his car or to allow the police to move his car was an "order of a member of the police department of the city while such member is acting in an official capacity in carrying out his duties," within the scope of § 39-54(a) of the Code of Ordinances of the City of Mobile. As such, a reasonable officer could have concluded that McCorvey's statement that he did not want to move the vehicle and he did not want the officers to push the vehicle because he was waiting to hear from his mechanic amounted to a failure and refusal to obey such directive or order, placing him in violation of § 39-54(a) and providing the requisite probable cause to arrest him for failure to obey the order of a police officer.[8]

Based on the foregoing, the Court concludes as a matter of law that Officer Smith possessed at least arguable probable cause to arrest McCorvey for failure to obey, and that qualified immunity therefore insulates Officer Smith from liability on the § 1983 false arrest claim stemming from that arrest. *See, e.g., Wood*, 323 F.3d at 878 (explaining that arrest does not violate Fourth Amendment if officer has probable cause, and that officer who has arguable probable cause for arrest is entitled to qualified immunity on § 1983 false arrest claim).

The conclusion that Officer Smith had arguable probable cause to arrest McCorvey leads inexorably to the corollary that Officer Smith is also entitled to qualified immunity on plaintiff's

---

[7] Indeed, nothing in the text of the statute or its interpretive authorities prohibits police officers from directing that a vehicle be moved if there is a possibility that the vehicle might be damaged by the move.

[8] To accept plaintiff's reasoning would be to hold that a motorist is free to disregard a police officer's directive that he move his vehicle from a roadway as long as the motorist believes or speculates that damage might "perhaps" occur if the car were moved. The selfish interests of a motorist must yield to the safety of the public, and police officers' authority under § 32-5A-139 must not be abrogated or circumscribed merely because a motorist is worried about possible damage to his car.

§ 1983 malicious prosecution cause of action.[9]  The law is crystal clear that "lack of probable cause is a required element to prove a § 1983 claim for malicious prosecution in violation of the Constitution, [and that] the existence of probable cause defeats the claim."  *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008); *see also Kingsland*, 382 F.3d at 1234-35 (§ 1983 malicious prosecution claim turned on "whether there was an absence of probable cause for the original criminal proceeding").  The Court having already concluded that there was at least arguable probable cause for the arrest and prosecution of McCorvey, Officer Smith is also entitled to qualified immunity on the malicious prosecution claim.

**IV.    Conclusion.**

For all of the foregoing reasons, plaintiff's objections to the Report and Recommendation are **sustained in part**, and **overruled in part**.  Subject to the modification and supplementation set forth above, the Report and Recommendation is **adopted** as the opinion of this Court insofar as it recommends the dismissal of plaintiff's § 1983 malicious prosecution claim (Count Two), as well as plaintiff's § 1983 false arrest claim (Count One) arising from the second seizure.  The Motion to Dismiss (doc. 16) is **granted** as to those specific claims, and those claims are **dismissed**.  As to the § 1983 Fourth Amendment claim set forth in Count One and arising from the initial seizure and detention of plaintiff (prior to any order that he move the vehicle), the Report and Recommendation is **overruled** and the Motion to Dismiss is **denied** for the reasons stated herein.

Defendant is hereby **ordered** to file an answer on or before **November 4, 2008**.

**DONE** and **ORDERED** this 21st day of October, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[9]  Defendant insists that no § 1983 cause of action exists for malicious prosecution; however, binding appellate authority runs directly contrary to this assertion.  *See Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008) ("a Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim") (citation omitted); *Skop*, 485 F.3d at 1144 (recognizing "malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983") (citation omitted).  This Court is not at liberty to disregard these binding authorities merely because defendant disagrees with them.